ORIGINAL

PAUL J. CUNNEY
A Law Corporation
220 S. King Street, #2290
Honolulu, Hawaii 96813
Telephone No. 523-0077

PAUL J. CUNNEY, #3145
VICTOR J. BAKKE, #5749
Attorneys for Defendant
ISAEL PEREZ

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 13 2006

at __ o'clock and __ min __ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO: 05-00116 JMS-01 |
| Plaintiff, ) | SENTENCING STATEMENT and |
| ) | CERTIFICATE OF SERVICE |
| vs. ) | |
| ) | Date: April 10, 2006 |
| ISAEL PEREZ, ) | Time: 1:30 pm |
| ) | Judge: J. Michael Seabright |
| Defendant. ) | |

<u>SENTENCING STATEMENT</u>

Pursuant to the October 30, 1997 Local Rules of Practice for the U.S. District Court for the District of Hawaii, Sentencing Procedure, Defendant ISAEL PEREZ, by and through his counsel VICTOR J. BAKKE, has the following objections to the "Draft" presentence investigation report prepared on September 22, 2003.

<u>With respect to paragraph # 34</u>

Defendant submitted to two debriefings, not one, as stated in the PSR. Specifically, Defendant met with HPD Task Force Officer Kriss Cockett on April 26, 2005 and again on July 19, 2005. Counsel was present at both Debriefings.

During said debriefings, Defendant was completely open and honest with Officer Cockett regarding his illicit activities. Defendant also provided detailed information regarding other people

who were involved in drug trafficking. Accordingly, the government has recently requested, and Defendant has agreed, to testify against one of the individuals whom Defendant was debriefed about named Cori Silva – aka "Oni" - as it appears that Mr. Silva plans on going to trial.

Defendant also provided further information to Officer Cockett via Counsel regarding the location of approximately $18,000 in illicit cash which was later recovered by agent Cockett and was then forfeited to the government. Said monies were not found during a search of Defendant's apartment and would have remained undiscovered if not for Defendant's honest and full cooperation.

Defefendant further objects to the government's claim that Defendant is not eligible for "safety valve" because he was a leader or manager. Defendant submits that he was not a leader or manager and that he was not "engaged in a continuing criminal enterprise" as defined in 21 U.S.C. §848 as Defendant did not "obtain substantial income or resources". See, 21 U.S. C. §848(c)(2)(B). (Note: this issue is addressed in more detail, supra, in objection to paragraph # 47)

With respect to paragraphs #42 and #44

The PSR determined the Base Offense Level to be Level 38 based upon the assumption that the level should be based upon the weight *(actual)* of the methamphetamine. However, it is Defendant's position that his base offense level should be level 34 because it should be determined based upon the weight of the methamphetamine *mixture* and not upon the methamphetamine (actual), or "ICE".

Defendant's position is based, inter alia, upon the fact that in Count I of the superseding indictment the charge states that Defendant is responsible for ". . . 500 grams or more of a substance and *mixture* containing a Detectable amount of methamphetamine, its salts, isomers and

2

salts of its isomers . . .". Count I does not make any reference to the "purity" of the drug or the "actual" weight of the drug.

In Counts II, III and V, the indictment charges that Defendant is responsible for ". . . *500 grams or more of methamphetamine, its salts, isomers and salts of its isomers . . .*". (emphasis added). Again however, the indictment does not make any reference to the "purity" of the drug or the "actual" weight of the drug. Furthermore, 21 U.S.C. §841(b)(1)(a) distinguishes between 50 grams or more of methamphetamine and 500 grams or more of a mixture containing methamphetamine. Thus, if the government intended to hold defendant accountable for the methamphatimine (actual), then the indictment in Counts II, III and IV should have referred to 50 grams or more and not 500 grams or more.

Consequently, the indictment did not provide Defendant with any notice that he would be subject to an increased penalty based upon a later finding that the drugs would be considered methamphetamine (actual) or ("ICE").

Furthermore, the plea agreement is different than the indictment in that it states in paragraph 1 that in Counts II, III, and V that Defendant was charged with ". . . 500 grams or more of a *mixture* and substance containing a detectable amount of methamphetamine . . .". Thus, paragraph 1 of the plea agreement refers to the drugs *in all counts* as a *"mixture"* and there is no reference to methamphetamine (actual) or "ICE" or to the "weight" or to the "purity" of the drug.

In fact, the plea agreement does not refer to the weight and/or purity of the drugs until paragraphs 8(c) and (d). Specifically, paragraph 8(c) lists exhibit 7 as having a weight of 893.2 grams and exhibit 8 as having a weight of 447.3 grams and paragraph 8(d) lists exhibit 9 as having a weight of 891.3 grams.

The problem is that the plea agreement does not state that these weights represent the methamphetamine (actual) weights, as opposed to, the methamphetamine *mixture* that is stated in Count I of the indictment *and* in paragraph 1 of the plea agreement. (See also, U.S.S.G. §2D1.1, Note to Drug Quantity Table (A) which states that "Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.").

The agreement also never states that the drugs would be considered "ICE" based upon their purity. Instead, paragraph 8 (e) simply states that defendant agrees ". . . that these *amounts* shall be used in calculating his base offense level under Sentencing Guideline Section 2D1.1". (emphasis added). However, paragraph 8(e) also states that Defendant is responsible for the "five pounds" of methamphetamine described in paragraph 8(a). Defendant submits that it would be completely unnecessary to include this statement if it was the government's intent to have Defendant sentenced for methamphetamine (actual) or "ICE" since the amounts stated in paragraphs 8 (c) and (d) would max the Defendant out at level 38 without any need to make reference to the additional 5 pounds.

Consequently, as a result of the government's failure to specify in the indictment, and/or in the plea agreement, whether the drugs constituted methamphetamine, methamphetamine (actual) or "ICE", the Defendant reasonably believed that he was being rewarded for his plea bargain by receiving a sentence based upon 1.5 KG but less than 5 KG of methamphetamine. Furthermore, if it were the government's intent to sentence Defendant for 1.5 KG or more of methamphetamine (actual) or "ICE" then the government had the responsibility to state that fact within the plea agreement, especially since the difference between level 34 and level 38 is 7 years.

4

### With respect to paragraph #47

Defendant objects to a 2 level enhancement based upon the PSR finding that Defendant was an "organizer, leader, manager, or supervisor" within the meaning of U.S.S.G. §3B1.1(c).

In contrast to the report, Defendant was not the "source" of the methamphetamine. The source of the drugs was Mr. Langaman and Mr. Soto who resided on the mainland and it is they who used the Defendant and Mr. Saravia to distribute the drugs to individuals in Hawaii. It was Langaman and Soto who decided who the drugs went to and how much money was to be received. It is obvious from the shipping and bank records recovered from Defendant that Defendant was collecting the money and depositing some of it into an account for Langaman's mother and was then sending the rest of it back to Langaman and Soto. Furthermore, once Defendant delivered the drugs as instructed, Defendant did not maintain any contact with, or control over, the individuals whom the drugs were delivered to.

Consequently, Defendant should not receive the 2 level increase because Defendant was not the source of the drugs and did not have any control over the distribution of the drugs or other people who were involved in the distribution, and Defendant did not benefit greatly from the proceeds of the transactions.

Furthermore, Defendant respectfully request that he be given a 2 level reduction based on his role in the offense as a "Minor" participant pursuant to U.S.S.G. §3B1.2 (Mitigating Role). Specifically, Defendant submits that he is less culpable than most other participants to wit: Mr. Langaman, Mr. Soto and Ms. Pearly Langaman (Moore) as they were the organizers and leaders of the group.

<u>With respect to paragraph 84</u>

Defendant submits that his total offense level based solely upon the adjustments contained herein, not including any future motions for downward departure such as "safety valve", should be level 29 (Base offense level 34 minus 2 levels for minimal role and minus 3 levels for acceptance of responsibility).

<u>With respect to paragraphs #88 and #89 and #100</u>

Defendant expects the government to file a motion for downward departure based upon substantial assistance for Defendant's agreement to testify against his co-defendant Mr. Saravia and to testify against an unrelated Defendant Mr. Silva and for turning in approximately $18,000 in cash. Accordingly, Defendant will be requesting a reduction in his sentence and a reduction is his term of supervised release.

DATED at Honolulu, Hawaii, <u>March 10, 2006</u>.

_____
VICTOR J. BAKKE
Attorney for Defendant
ISAEL PEREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO: 05-00116 JMS-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| ISAEL PEREZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

CERTIFICATE OF SERVICE

I, VICTOR J. BAKKE, do hereby certify that a true and correct copy of the foregoing document shall be hand delivered or mailed via U.S. postal service on October 6, 2003 to the following:

BEVERLY WEE SAMESHIMA
Assistant U.S. Attorney
Room 6100, U.S. Courthouse
300 Ala Moana Boulevard, Box 50183
Honolulu, HI 96850

MONA L. GODINET
U.S. Probation Office
District of Hawaii
Prince Kuhio Federal Building
300 Ala Moana Boulevard
Honolulu, HI 96850

DATED at Honolulu, Hawaii, March 10, 2006.

VICTOR J. BAKKE
Attorney for Defendant
ISAEL PEREZ